In the Matter of the ESTATE OF Elsie
BRADLEY, Deceased.

Paul R. AHR, Director of State Department of Mental Health, Appellant,

v.

Basil BRADLEY, Personal Representative of the Estate of Elsie Bradley, Deceased, Respondent.

No. WD34182.

Missouri Court of Appeals,
Western District.

Nov. 15, 1983.

As Modified Jan. 31, 1984.

John Ashcroft, Atty. Gen., Jefferson City, Priscilla F. Gunn, Asst. Atty. Gen., for appellant.

Arthur M. O'Keefe, Moberly, for respondent.

Before TURNAGE, C.J., Presiding and DIXON and LOWENSTEIN, JJ.

DIXON, Judge.

The Missouri Department of Mental Health appeals from the award of the trial court of $1,500.00 on the Department's claim against the estate of Elsie Bradley in the amount of $3,537.80 for expenses incurred in the care of Mrs. Bradley by Fulton State Hospital. The issue on appeal is the effect to be given the language of Section 630.220, RSMo Supp.1982, "all sums due ... the department on account of any patient ... the account therefor, certified by the head of the facility ... shall be prima facie evidence of the amount due."

Elsie Bradley was admitted voluntarily to Fulton State Hospital on September 18, 1981, and remained there through December 8, 1981. From September 28 to November 10, the costs incurred by Mrs. Bradley were paid by Medicare. In a November 9, 1981, letter, Dr. Jerry Wessel, Physician Advisor of the Utilization Review Committee at the hospital, notified Truby Koenig, Mrs. Bradley's cousin, that a state review board had determined that it was no longer necessary for Mrs. Bradley to remain in the General Medical and Surgical Unit (GM & S Unit) because she was receiving only custodial care. The letter also noted that "this determination [by the review board] only means that Medicare and/or Medicaid benefits will not be provided beyond 10 November 1981." Soon after receiving the letter, Mrs. Koenig gave it to Elizabeth Zaner, the guardian of Elsie Bradley.

On November 12, 1981, the hospital sent to Mrs. Zaner a document titled "Notice of Costs." Zaner signed the Notice on November 18 and returned it to the hospital. The "Notice of Costs" included the following:

The charges for care and treatment for <u> Elsie Bradley </u> a patient of <u> Fulton State</u>
(name of patient) (DMH

<u>Hospital </u>, receiving care and treatment at <u> Fulton State Hospital </u> has
<u> Facility)</u> (DMH Facility, Nursing Home, etc.)

been determined to be $ <u> 5.25 </u> per <u> day (effective 11–11–81) </u> after applying the
(Day, Month, Service)

Standard Means Test (Section 202.330 RSMo.[1]). The cost for care and treatment is $61.03 per <u> day </u> .
(Day, Month, Service)

The difference between the costs of care and treatment and the amounts received in payment may be claimed against the patient's estate at death by the Department of Mental Health. This is required by Section 473.398 RSMo.

The amount charged for care and treatment may be adjusted from time to time because the costs of care and treatment or the financial resources available to the patient may change. The cost of care and treatment is recomputed annually. The cost of care and treatment is subject to change due to changes in the level of care and treatment or the recomputation of costs. If at any time you have any questions regarding the amounts being charged and/or the cost of care and treatment, please contact the Accounting Office at <u> Fulton State Hospital </u> .
(DMH Facility)

Mrs. Bradley was discharged from the hospital on December 8, 1981, and died on January 14, 1982.

On February 1, 1982, the hospital certified Mrs. Bradley's account to the Office of

---

**1.** The laws governing the Department of Mental Health, found previously in Chapter 202, were significantly amended and replaced by Chapter 630, effective August 13, 1980. Section 630.210, RSMo Supp.1982, requires the use of the Standard Means Test.

the Attorney General for collection. A claim for $3,579.80 was filed in the probate division of the Randolph County Circuit Court. At the hearing the Department's attorney orally amended the claim to $3,537.80 to reflect a $42.00 payment made on the account after the account had been certified.

At the hearing the Department introduced the Certificate of Account of Mrs. Bradley, which had been properly certified by the superintendent of the hospital. The Department's only witness was Jean Sabo, a State of Missouri resource investigator. Mrs. Sabo explained the formula for determining the certified amount, the Standard Means Test and the account certification process. She also testified about the differences in treatment and the costs between the GM & S Unit and the other units at the hospital. Finally, Mrs. Sabo stated that Medicare had refused to continue paying for Mrs. Bradley's care as of November 10 because under Medicare standards Mrs. Bradley no longer required the care provided in the GM & S Unit.

The estate presented two witnesses. Basil Bradley, the cousin of Mrs. Bradley's late husband, testified that he had visited Mrs. Bradley in the hospital on about four to six occasions. He stated that on each visit she appeared to have no serious mental problems.

Mrs. Elizabeth Zaner, the Public Administrator of Randolph County and Mrs. Bradley's guardian, testified generally about nursing home costs in the area. She also stated that the two bills from the hospital that she paid had noted that Mrs. Bradley was receiving only custodial care. Mrs. Zaner testified that she relied on the Notice of Costs in concluding that Mrs. Bradley was only being charged the $61.03 per diem rate beginning November 11 instead of the per diem charge of $131.60. Had she known of the higher charge, Mrs. Zaner would have moved Mrs. Bradley to a different care center in the area that charged a lower rate.

On August 9, 1982, the Probate Division awarded the Department $1,500.00 on its claim.

The issue before this court is the effect of the certificate as prima facie proof. The Department argues that the prima facie case established by the Certificate of Account was not properly rebutted and therefore, under Sections 473.398, 630.205, and 630.220, RSMo Supp.1982, the Department is entitled to a judgment for the full amount of its claim. The estate argues that the amount of the Department's claim is unreasonable in light of the Notice of Costs and the letter of Dr. Wessel. The Estate also asserts that the evidence, presented at the hearing, is sufficient to rebut the prima facie case and support the $1,500.00 award of the trial court.

The Department cites *State v. Siecke*, 472 S.W.2d 367 (Mo. banc 1971), in support of its position. In *Siecke* the court addressed the question of whether the state's certificate of account was sufficient evidence to require a verdict for the amount in the certificate when no evidence was offered to challenge the state's claim. In that case the state was proceeding under a similar statute, Section 191.130, RSMo 1969, which, like Section 630.220, stated that the certificate was "prima facie evidence of the amount due." The court cited only part of the definition of prima facie evidence noted in *State ex rel. State Dept. of Public Health & Welfare v. Ruble*, 461 S.W.2d 909, 913 (Mo.App.1970), which stated that

> "Prima facie evidence" means such evidence which, in law, is sufficient to satisfy the burden of proof to support a verdict ... when not rebutted by other evidence. Prima facie evidence, *however, is not conclusive evidence*, and while it suffices to support a judgment upon a fact so established, *it does not require or demand a verdict* for the party whose contention it supports.

(emphasis added). The *Siecke* court concluded that because no evidence other than the certificate was offered, the amount of charges noted in the certificate required

entry of a verdict in that amount. *Siecke, supra,* 472 S.W.2d at 370. The other case cited by the Department, *Matter of Estate of Kamer,* 619 S.W.2d 904 (Mo.App.1981), was also a case where no evidence was offered by the party opposing the state's claim. The holding in *Siecke,* relied on in *Kamer,* is a variant of the common law rule as stated in *Ruble. Siecke,* in holding that prima facie proof under the statute *requires* a verdict, establishes a different rule for cases where the statutory prima facie proof is not contested. *Siecke* thus varies the common law rule which did not make prima facie proof conclusive nor require or demand a verdict upon such prima facie proof.

In the instant case, the record discloses other evidence contrary to the certificate. *Siecke* cannot be read as requiring a verdict in accordance with the certificate when evidence to the contrary is offered and received. The burden of proof remained on the Department throughout the case. *See Ruble, supra,* 461 S.W.2d at 913. The evidence in the instant case presents a question of whether the level of care charged for was actually provided. The prima facie evidence alone will not compel a verdict when contrary evidence is presented.

█ The trial court could reasonably under the evidence in this case find that the type of care for which Mrs. Bradley was charged was not provided. The November 9 letter from Dr. Wessel to Mrs. Koenig stated that GM & S Unit care was no longer necessary because Mrs. Bradley was receiving "custodial care only." Jean Sabo testified that the "custodial care" in that letter referred only to Medicare guidelines, which differ from the standards the hospital uses in classifying the level of care a patient requires. However, other evidence contradicts that explanation. First, the Notice of Costs tends to refute that contention, at least in this instance. That document stated that beginning November 11, 1981, the *same day* the Department began charging Mrs. Bradley the $131.00 per diem, the Department had determined her

costs for care and treatment to be the $61.03 per day, which, according to Mrs. Sabo, was the basic cost of care for the general psychiatric unit at the hospital where the patients receive only custodial care. Mrs. Sabo, the Department's only witness, admitted to having never seen Mrs. Bradley in the hospital. Secondly, Mrs. Zaner testified that the bills she received from the hospital noted that Mrs. Bradley was receiving only custodial care. Competent and substantial evidence supports the court's finding in this court-tried case, thus satisfying the applicable standard of appellate review. *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). Neither party requested findings of fact or conclusions of law and none were entered by the court. The order of the trial court simply stated that the Bradley estate pay the Department $1,500.00. Absent a request and entry, the fact issues are presumed to be in accord with the judgment and the judgment will be affirmed under any reasonable theory presented and supported by the evidence. *McKnight v. McKnight,* 638 S.W.2d 789 (Mo.App.1982).

█ The judgment was proper under the law and therefore the judgment is affirmed. Based on a $61.03 per diem rate reduced by the $147.00 payments made by Mrs. Zaner, the amount due the Department is $1,561.84, not the $1,500.00 awarded by the trial court. The Department has not suggested a basis for the amount arrived at below. The difference is apparently due to mathematical error. The judgment can be modified to conform to the evidence presented to the trial court. *City-Wide Asphalt v. E.E. Scott Construction Co.,* 610 S.W.2d 330 (Mo.App.1980); Rule 84.14.

The judgment appealed from is affirmed, but the case is remanded with directions to enter a new judgment in lieu thereof, in the corrected amount of $1,561.84.

All concur.