STATE of Missouri, ex rel. Roma
MARTIN–ERB, Appellant,

v.

MISSOURI COMMISSION ON
HUMAN RIGHTS, et al.,
Respondents.

No. SC 83704.

Supreme Court of Missouri,
En Banc.

May 28, 2002.

Frank E. Wallemann, Jefferson City, for Appellant.

Lowell D. Pearson, Marshall V. Wilson, Jane C. Drummond, Jefferson City, Alan L. Rupe, Wichita, Kan., Husch & Eppenberger, LLC, for Respondent Wal–Mart.

Jeremiah W. (Jay) Nixon, Atty. Gen., James R. Layton, State Sol., Keith D. Halcomb, Asst. Atty. Gen., Jefferson City, for Respondent Mo. Com'n on Human Rights.

LAURA DENVIR STITH, Judge.

Ms. Roma Martin–Erb filed a complaint in 1997 with the Missouri Commission on Human Rights (MCHR) alleging that she was fired by Wal–Mart because of her race, in violation of section 213.055, RSMo 1994[1] of the Missouri Human Rights Act (MHRA). Three years later, the executive director of the MCHR determined there was "no probable cause" to believe that discrimination occurred and closed her complaint. Ms. Martin–Erb sought a writ of mandamus to compel the MCHR to follow its own procedures in reviewing her complaint and to grant her relief against Wal–Mart. On motion of the MCHR and Wal–Mart, the circuit court dismissed the petition, finding the executive director's decision was not reviewable. Ms. Martin–Erb appealed.

This Court holds that the executive director's "no probable cause" determination is reviewable under section 536.150 as a noncontested case for the limited purpose of determining whether she arbitrarily exercised or refused to exercise her statutory and regulatory duties in making that determination. The executive director is a necessary party to such a suit, however, because she is the one on whom the statute imposes the duty. Because Ms. Martin–Erb sued only the MCHR and its chairperson, the court's judgment quash-

---

1. All statutory references are to RSMo 1994, unless otherwise stated.

ing its preliminary writ is affirmed, but the case is remanded.

## I. FACTUAL AND PROCEDURAL HISTORY

Wal–Mart hired Ms. Martin–Erb on August 5, 1991. She began as a hourly photo lab associate and was later promoted to photo lab manager on August 24, 1991. She was terminated on January 11, 1997. Ten days later, she filed a complaint with the MCHR alleging that Wal–Mart discharged her on the basis of race in violation of the MHRA.

After investigating her complaint for over three years, the executive director of the MCHR sent Ms. Martin–Erb a "no probable cause" letter on February 4, 2000, stating that, after investigation, a finding of "no probable cause" was made and her complaint closed. The letter also informed her that she had 30 days to seek judicial review of the "no probable cause" determination. Within that time period and pursuant to section 536.150, Ms. Martin–Erb filed what she styled as a petition for writ of review and mandamus requesting that the court set the matter for full evidentiary hearing on the merits; find Wal–Mart violated chapter 213; find the MCHR failed to fulfill its statutory duties in processing a meritorious complaint; find its decision was unreasonable, arbitrary and capricious, and involved an abuse of discretion; and direct that she be made whole and offered back pay and reinstatement. The court issued a preliminary order in mandamus. Wal–Mart intervened, and it and the MCHR moved for dismissal.

The court quashed the preliminary writ and dismissed the petition, concluding that Ms. Martin–Erb's petition was, in effect, a civil action against Wal–Mart, and that she could have sought a "right to sue" letter from the MCHR permitting her to file such an action, but that she had failed to do so within the two-year statutory period

provided in section 213.111. It held that section 536.150 did not give her a separate right to seek judicial review of the "no probable cause" determination once the two-year period had passed and that the earlier opportunity to seek a "right to sue" letter provided her with an adequate remedy at law, precluding equitable relief. After opinion by the court of appeals, this Court granted transfer. Mo. Const. art. V, sec. 10.

## II. PROVISIONS OF THE MISSOURI HUMAN RIGHTS ACT

It is helpful to briefly set out certain pertinent provisions of the MHRA as they relate to the issuance of a "probable cause" letter and the right to file suit. A person who claims to have been subjected to an unlawful discriminatory practice may, within 180 days of the alleged discrimination, file a complaint with the MCHR, providing details of the alleged discriminatory conduct and such other information as the MCHR may need. Sec. 213.075.1. The MHRA provides that "[t]he executive director shall, with the assistance of the commission's staff, promptly investigate the complaint." Sec. 213.075.3. The statute further specifically requires that "[t]he investigation, [and] determination of probable cause ... shall be conducted according to such rules, regulations and guidelines as the commission shall prescribe." *Id.* The MCHR accordingly adopted regulations providing that the investigation and "probable cause" determination will be:

> accomplished by methods including, but not limited to, fact-finding conferences, personal interviews, written interrogatories, tests, requests for production of documents, books or papers, or other materials and reviews of investigations of other civil rights agencies.

8 CSR 60–2.025(9).

Under the MHRA, if the MCHR has not completed its administrative processing of

the complaint and issued its determination within 180 days, the complainant may request it to issue a "right to sue" letter. Sec. 213.111.1. If the letter is timely requested, the MCHR must provide it. *Id.* The complainant must file any civil action against the person or entity allegedly committing the discrimination within 90 days of the date of the MCHR's letter, but in no event later than two years after the alleged discrimination occurred or was discovered. *Id.*[2] Once a complainant is provided with a "right to sue" letter, the MCHR is precluded from further pursuing that complaint. *Id.*

If no "right to sue" letter is requested, the executive director must continue investigating the complaint to determine whether "probable cause" exists to find discrimination. If, after investigation, the executive director determines that "probable cause" exists for crediting the allegations of the complaint, the statute requires the executive director to use various means to attempt to immediately eliminate the unlawful discriminatory practice. Sec. 213.075.3. Ultimately, if conciliation fails, the MCHR chooses whether to set the matter for hearing and determination. If it does so, its ruling may be reviewed as a contested case pursuant to sections 213.085 and 536.100.[3]

If the executive director finds "no probable cause," then the complaint is closed and the complainant can proceed no further. Although the statute does not directly address whether or how the executive director's "no probable cause" determination can be reviewed, agency regulations have, since 1988, provided for judicial review, stating:

> Any person aggrieved by dismissal of a complaint may obtain judicial review by filing a petition in the circuit court of the county of proper venue within thirty (30) days after the mailing or delivery of the notice of dismissal. Judicial review shall be in the manner provided by Chapter 536, RSMo for noncontested cases.

8 CSR 60–2.025(7)(E). The "no probable cause" letter received by Ms. Martin–Erb informed her that her complaint was closed upon a finding of "no probable cause" and that she had a right to seek judicial review within 30 days. She filed her petition for review in conformity with these provisions.

### III. SUIT AGAINST WAL–MART

■ Although Ms. Martin–Erb filed her petition for review and mandamus against only the MCHR and its chairperson, she asked the circuit court to hold a hearing on the merits of her claim against Wal–Mart

---

**2.** That section states, in pertinent part:

Any action brought in court under this section shall be filed within ninety days from the date of the commission's notification letter to the individual but no later than two years after the alleged cause occurred or its reasonable discovery by the alleged injured party. Sec. 213.111.1.

**3.** More specifically, if attempts at conciliation by the executive director fail, and if the chairperson of the MCHR determines the circumstances so warrant, notice will be given and a hearing held before a panel of the MCHR or a hearing examiner as provided in chapter 536. Sec. 213.075.5–.11. If the MCHR concludes

respondent engaged in an unlawful practice, it issues an order requiring respondent to cease and desist and, in employment cases, award back pay, hiring, reinstatement or upgrading. Sec. 213.075.11(1). If the MCHR concludes respondent did not engage in an unlawful practice, the complaint is dismissed. Sec. 213.075.12. A person aggrieved by a decision of the MCHR may obtain judicial review. Secs. 213.075.16, 213.085.2. Review after such a hearing and decision is pursuant to the contested case procedures set out in section 536.100, *see Hamby v. City of Liberty*, 20 S.W.3d 515 (Mo. banc 2000).

and to grant her reinstatement and back pay. As noted, Wal–Mart intervened and the circuit court later held that her claims against it were time-barred under section 213.111.

■ The trial court was correct in dismissing Ms. Martin–Erb's request for relief directly against Wal–Mart. Section 213.111 is clear that any civil suit against the alleged discriminating party must be filed within two years of the occurrence or discovery of the discrimination. Sec. 213.111.1. Ms. Martin–Erb alleged the discriminatory conduct occurred on January 11, 1997. After filing a complaint with the MCHR, she chose to continue pursuing remedies through the administrative process rather than seeking a "right to sue" letter. Once two years had passed—that is, after January 11, 1999—Ms. Martin–Erb could no longer sue Wal–Mart for the discrimination directly, but was limited to seeking action by the MCHR. To the extent that Ms. Martin–Erb asked the trial court to grant her relief directly against Wal–Mart, it properly denied her relief.[4]

## IV. RELIEF AGAINST THE MCHR

■ Ms. Martin–Erb also alleged that the MCHR's finding of "no probable cause" "fails to comply with the requirements of Chapter 213 for processing a meritorious complaint," that the decision was unreasonable, arbitrary and capricious, and that it involved an abuse of discretion. She has asked this Court to remand the matter to the circuit court and order the petition be reinstated and a *de novo* hearing held.

The MCHR asserts that the executive director's decision is a discretionary, non-reviewable determination and that the same reasoning that precludes her from suing Wal–Mart at this juncture also precludes her from suing the MCHR. It further contended at oral argument that to the extent the MCHR provided for an alternative method of interlocutory judicial review in 8 CSR 60–2.025(7)(E), it has exceeded its statutory authority and the regulation is void.

The MCHR is correct that none of the governing provisions of the MHRA provide for judicial review of the executive director's "no probable cause" decision. Sections 213.075.16 and 213.085.2 provide for hearings before the commission and provide that any person aggrieved by *an order of the commission* may obtain judicial review of the *commission's* decision; they are silent as to review of the executive director's "no probable cause" determination.

To the extent that 8 CSR 60–2.025(7)(E) can be read as providing an avenue for judicial review of the merits of the complainant's claim at the "no probable cause" stage without timely seeking a "right to sue" letter, this Court agrees such review is beyond the authority provided the MCHR. But, to the extent that the regulation simply informs a complainant of the right to file a petition for review under section 536.150 it is correct. Section 536.150.1 provides:

> When any administrative officer or body . . . render[s] a decision **which is not subject to administrative review**, determining the legal rights, duties or

---

4. Of course, regardless whether the statute of limitations for filing a civil suit has run, if the executive director does find in a particular case that "probable cause" exists and the case proceeds to a hearing on the merits of the claim, the MCHR may afford relief to the complainant in the form of back pay and reinstatement, and the losing party has a right of appeal of the merits of the MCHR decision pursuant to sections 213.075 and 213.085 as a contested case. *See Hamby,* 20 S.W.3d at 518; *Biggs v. Missouri Com'n on Human Rights,* 830 S.W.2d 512, 515 (Mo.App. E.D. 1992).

privileges of any person ... **and there is no other provision for judicial inquiry into or review of such decision,** such decision may be reviewed by suit for ... mandamus ... [to] ... determine whether such decision, ... is unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involves an abuse of discretion. . . .

Sec. 536.150.1 (emphasis added).

This section applies here, for the executive director's "no probable cause" decision is not subject to administrative review by the MCHR or any other administrative body, and "there is no other provision for judicial review" of that decision. Yet, the decision of the executive director is a final decision of an administrative officer "determining the legal rights, duties or privileges of any person." Sec. 536.150. The executive director's issuance of the "no probable cause" letter thus squarely fits within the provisions of section 536.150 as a decision in a noncontested case not otherwise reviewable that determines Ms. Martin–Erb's legal right to further proceedings leading to relief under the unique enforcement structure of the MHRA.

MCHR is incorrect in suggesting that, as Ms. Martin–Erb could have sought relief from the discrimination by asking for a "right to sue" letter pursuant to section 213.111, another provision for judicial review did exist.[5] The "right to sue" letter provided for in that section would only have permitted Ms. Martin–Erb to pursue a civil action against Wal–Mart. But, this Court is here addressing Ms. Martin–Erb's separate right to seek relief from the MCHR for its executive director's alleged failure to perform her statutory duties, an alleged failure that had not yet occurred when the statute of limitations as to Wal–Mart passed and which could not, in any event, have been effectuated by seeking a "right to sue" letter.

Indeed, in light of the fact that it took the executive director three years to issue the "no probable cause" letter, serious due process concerns would arise were this Court to hold that the two-year statute of limitations for civil actions applied to its administrative determinations, for this would mean that the right to review the issuance of the letter expired a year before the letter was even issued. Ms. Martin–Erb's decision not to seek a "right to sue" letter or file a civil suit against Wal–Mart within two years is not determinative of her right to pursue equitable relief against the MCHR here.

The MCHR also suggested at oral argument, in essence, that Ms. Martin–Erb is not aggrieved by the issuance of the "no probable cause" letter. It argues that the purpose of the MHRA is only to provide the MCHR with the authority to investigate and penalize discrimination, and the individual complainant is merely a potential incidental beneficiary of the MCHR's decision, who has no right to complain if the MCHR decides not to proceed in a particular case, and who has no right to seek review under section 536.150.

That this argument goes too far is confirmed by the history of the MHRA. As originally passed, the MHRA permitted

---

5. There is no requirement that a complainant request a "right to sue" letter if the MCHR does not act within 180 days of the filing of her complaint. Ms. Martin–Erb could, as she chose, continue through the administrative process without pursuing a civil action. *See Hamby,* 20 S.W.3d at 517 ("the complainant may request a 'right to sue letter' "). Indeed, inasmuch as, after 180 days, the MCHR is permitted to pursue a complaint only if a "right to sue" letter is *not* sought, and as the parties indicated the MCHR customarily takes more than one year to decide whether to pursue enforcement, it is evident that some percentage of meritorious complaints remain with the MCHR.

the MCHR to receive complaints, investigate and recommend remedies and an end to discrimination, but the MCHR had no enforcement authority in this regard. *See generally* ch. 213, RSMo 1959. In 1961, however, the legislature separately adopted a series of statutory provisions specifically intended to allow individuals the right to seek relief from discriminatory employment practices by filing a complaint with the MCHR, which was given the authority not just to investigate and conciliate, but, as it does now under chapter 213, to also require compliance. *See* ch. 296, RSMo 1961 ("Discriminatory Employment Practices").

In 1986, these provisions were added to chapter 213, which by that time had also been expanded to permit, as it does now, the MCHR to take action concerning complaints of discrimination in housing and other types of discrimination, to provide a remedy for the individual suffering such discrimination, and to provide for enforcement of its rulings by the courts. *See, e.g.,* secs. 213.075, .085, .111, RSMo 1986.

While the MHRA has never guaranteed that the MCHR will decide to pursue to conclusion any particular complaint, at least since chapter 296's provisions were incorporated into it in 1986, it has specifically provided that the executive director and the MCHR will follow set procedures in determining whether there is "probable cause" to believe that such discrimination has occurred. Sec. 213.075.3. Those procedures require the executive director to determine whether there is "probable cause" and to attempt conciliation based on the merits of the individual claim. The statute and regulations contemplate a benefit to individual complainants who are aggrieved by the failure to grant them the process due them under the statute and regulations.

As applied here, this means that, while a court cannot compel the executive director to exercise her discretion so as to reach a particular result, it can compel her to follow the procedures set out in agency regulations for making the "probable cause" determination, for the "[r]ules of a state administrative agency duly promulgated pursuant to properly delegated authority have the force and effect of law and are binding upon the agency adopting them." *Missouri Nat. Educ. Ass'n v. Missouri State Bd. of Mediation,* 695 S.W.2d 894, 897 (Mo. banc 1985). *Cf. Division of Family Services v. Cade,* 939 S.W.2d 546, 551–552 (Mo.App. W.D.1997).

A failure to follow proper procedures in the exercise of discretion is an abuse of discretion controllable by mandamus, and the circuit court can compel her to exercise that discretion " 'so as to conform to lawful and just methods of procedure.' " *Mangieracina v. Haney,* 141 S.W.2d 89, 92 (Mo.App.1940), *quoting, State ex rel. Kelleher v. St. Louis Public Schools,* 134 Mo. 296, 35 S.W. 617, 619–620 (1896) (mandamus can require a public officer to do act that there is duty to perform). This is true even if the rules the agency ignored give it the discretion to ultimately deny petitioner the remedy sought. *Id.*

Thus, *Walker v. Personnel Advisory Bd. of State,* 670 S.W.2d 1, 4–5 (Mo.App. E.D. 1984), found that the matter before it was not subject to administrative review under the applicable statute and was not a contested case subject to review under section 536.100. Nonetheless, *Walker* held, this "does not mean that appellants' actions are unreviewable," *Id.* at 4, for the state is required to do more than make a bare allegation that it followed proper procedures in laying off petitioners. *Id.* Petitioners could challenge the layoffs by filing an action under section 536.150 for the limited purpose of determining "whether

the layoffs of respondents ... were accomplished under prescribed procedures and were lawful." *Id.* at 5. If so, then the court would not interfere with the appointing authority's discretionary decision as to which employees to lay off. If not, however, then mandamus would lie to require proper procedures to be followed. *Id.*[6]

■ These principles apply here. As required by chapter 213, the MCHR has prescribed procedural rules. If Ms. Martin–Erb makes specific allegations as to how the executive director failed to follow those rules, then section 536.150 gives her the right to file a mandamus action to determine whether the executive director's actions "were [in fact] accomplished under prescribed procedures and were lawful,"[7] *Walker v. Personnel Advisory Bd. of State,* 670 S.W.2d at 5, and, if so, whether she was prejudiced by the failure to follow

proper procedures. *Missouri Nat. Educ. Ass'n,* 695 S.W.2d at 897.

■ Whether application of these principles will afford Ms. Martin–Erb relief is less clear, for her petition merely conclusorily alleges that the MCHR has failed to follow the procedures set out in chapter 213 for processing a meritorious complaint, without stating the specific nature of that failure. Now that this Court has clarified her right to seek mandamus where chapter 213 procedures are not followed, it will be incumbent on her on remand to set out such specifics in order for the circuit court to determine whether she is entitled to relief. In so holding, this Court emphasizes that the circuit court should not substitute its discretion for that of the executive director in determining whether "probable cause" exists or how to proceed with conciliation or enforcement if "probable cause" is found.[8]

6. *See, e.g., Mangieracina,* 141 S.W.2d at 92 (court could compel license director by mandamus to perform statutory duty in non-arbitrary manner, although it could not substitute its discretion for his); *Heckler v. Chaney,* 470 U.S. 821, 833, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985) (presumption that agency decisions are unreviewable is rebutted where statute provides guidelines for enforcement); *Accardi v. Shaughnessy,* 347 U.S. 260, 268, 74 S.Ct. 499, 98 L.Ed. 681 (1954) (once an agency exercises its discretion and creates the procedural rules under which it desires to have its actions judged, the agency denies itself the right to violate those rules even if under them it can later chose not to grant requested relief); *Yellin v. United States,* 374 U.S. 109, 121–124, 83 S.Ct. 1828, 10 L.Ed.2d 778 (1963) (petitioner entitled to have House committee follow its own rules); *Mendez v. Immigration & Natur. Service,* 563 F.2d 956, 959 (9th Cir.1977) (courts look with disfavor upon actions taken by agencies that violate their own regulations and will invalidate such actions).

7. We reject the MCHR's further argument that, even were the executive director's decision otherwise subject to review, it is unreviewable, much as a prosecutor's decisions are largely unreviewable, because committed

to her sole discretion under section 536.150, which provides in relevant part that a court shall not:

> substitute its discretion for discretion legally vested in such administrative officer or body, and in cases where the granting or withholding of a privilege is committed by law to the sole discretion of such administrative officer or body, such discretion lawfully exercised shall not be disturbed.

Sec. 536.150.1. Here, the statute does not commit the decision whether to issue a "probable cause" letter to the unfettered discretion of the executive director, but rather requires the MCHR to prescribe rules, regulations and guidelines to direct the investigation and determination of "probable cause." Sec. 213.075.3. The MCHR did so. 8 CSR 60–2.025(9). "A writ of mandamus may issue in cases where the ministerial duties sought to be coerced are simple and definite, arising under conditions admitted or proved and imposed by the law." *State ex rel. Bunker Resource Recycling and Reclamation, Inc. v. Mehan,* 782 S.W.2d 381, 389 (Mo. banc 1990).

8. In a related vein, this Court rejects Ms. Martin–Erb's request in this Court to in effect turn the "probable cause" determination into

Allowing suits in mandamus, such as this one, to require the executive director to abide by the procedures set out for enforcement of the MHRA will not, as the MCHR suggests, inundate courts with suits over "no probable cause" determinations. In fact, the regulation implementing section 213.075, *i.e.* 8 CSR 60–2.025, became effective in 1988 and has permitted such suits for almost 14 years. There has been no influx of suits filed. Additionally, every person is entitled to seek a "right to sue" letter and then may pursue a civil action. The courts have been able to handle these actions. Review of a "no probable cause" determination presents an even narrower issue.

 While the Court finds that an action for mandamus is permitted to ensure that the executive director has complied with the regulations pertaining to her "probable cause" determination, the Court nonetheless agrees with the MCHR that the writ must be quashed because of Ms. Martin–Erb's failure to join the executive director as a party. She sued only the MCHR and its chairperson. Although the MCHR established the regulations under which the executive director must operate, the MHRA quite specifically provides that it is the executive director who is to make the "probable cause" determination pursuant to these regulations. Sec. 213.075.3. "The person or body whose duty it is to perform the act sought to be enforced by mandamus is therefore a necessary party respondent." *State ex rel. Nelson v. City*

*of Berkeley,* 991 S.W.2d 747, 749 (Mo.App. E.D.1999). *See also State ex rel. William R. Compton Co. v. Walter,* 324 Mo. 290, 23 S.W.2d 167, 170 (1929) (writ runs "to the person whose duty it is to perform the act required").

 Where, as here, a petitioner has erred in seeking relief in a manner that may be corrected, this Court has the discretion of remanding rather than reversing.[9] No statute sets forth any time limitation on the filing of a petition under section 536.150 by which review may be had in a noncontested case. *Hagely v. Board of Educ. of Webster Groves School Dist.,* 841 S.W.2d 663, 669, 670 (Mo. banc 1992). The only requirement is that the petition under section 536.150 be filed within a reasonable time. *Id.; State ex rel. Fortney v. Joiner,* 797 S.W.2d 848, 851 (Mo.App. W.D.1990). This Court remands to permit consideration of any motion to amend to name the proper party respondent.

 Ms. Martin–Erb argues that this Court should also direct that, if the circuit court finds on remand that the MCHR should have given further consideration to the merits of her complaint against Wal-Mart, that this further consideration and any resulting hearing take place in the circuit court rather than before the MCHR or its director, because they have followed the progress of this suit, and opposed her position in it, and, therefore, have lost

---

a mini-hearing by setting out rules governing the executive director's right to consider hearsay and credibility and by making the process open to the public. The statute requires a hearing only if "probable cause" is found, conciliation fails and the MCHR determines to proceed with enforcement. Ms. Martin-Erb's proposals are outside the scope of mandamus and are better directed to the legislature or to the MCHR itself than to the courts.

9. *State ex rel. Porter v. Hudson,* 226 Mo. 239, 126 S.W. 733, 740 (1910) (a plaintiff may be permitted to amend his petition and writ in accordance with the proofs); *State ex rel. Willman v. St. Joseph Hosp.,* 707 S.W.2d 828, 833 (Mo.App. W.D.1986) (remanding case to permit petitioner to amend petition in mandamus); *Mangieracina,* 141 S.W.2d at 92 (recognizing right to but denying remand to permit amendment of the writ)

their ability to be neutral arbiters of her claim.

■ Ms. Martin–Erb cites no authority for her position, and the Court rejects it. Those occupying quasi-judicial positions, such as the executive director and commissioners in this case, are held "to the same high standard[s] as apply to judicial officers by insisting that such officials be free of any interest in the matter to be considered by them." *Central Mo. Plumbing Co. v. Plumbers Local Union 35,* 908 S.W.2d 366, 370 (Mo.App. W.D. 1995). For this reason, every party is entitled to have his or her case considered by an administrative agency consisting only of persons who are not interested or prejudiced in the case or who are not parties to the cause. *Central Mo. Plumbing Co.,* 908 S.W.2d at 370; *Union Elec. Co. v. PSC,* 591 S.W.2d 134, 139 (Mo.App. W.D.1979).

■ But, this does not disqualify the MCHR or its executive director from hearing this case, any more than judges are disqualified from hearing a case merely because the litigant has appealed or sought an extraordinary writ as to one of the judge's decisions. In the latter case, whether a higher court grants or denies the appeal or writ, on remand the case will proceed before the same judge, absent other reasons for disqualification. *See, e.g. Stamatiou v. Stamatiou,* 827 S.W.2d 739, 741 (Mo.App. W.D.1992)(upon remand after husband's successful appeal, trial judge not required to disqualify himself *sua sponte* for having found husband's testimony not credible where judge had no interest in case, was not related to either party and had not acted as counsel).

■ Similarly, where review is sought of the actions of an administrative agency, "[a]bsent a legislative procedure for disqualification of a member of the Commission," *Union Elec. Co.,* 591 S.W.2d at 139, the agency or Commission will hear the cause on remand unless the litigant shows that the agency should be disqualified for some other reason, such as "upon a showing that a member is a party to a pending case, or is interested or prejudiced in the case." *Id.* This follows from the fact that administrative agencies by their nature perform a "combination of the investigatory and adjudicatory functions." *Matter of Duncan,* 541 S.W.2d 564, 568 (Mo. banc 1976), *citing, Withrow v. Larkin,* 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). To permit them to do so does "not violate the strictures of the due process clause" absent an actual showing of bias. *Id.* In this Court, Ms. Martin–Erb has not demonstrated any ground that would require disqualification of any of commissioners or of the executive director. To make such a showing on remand Ms. Martin–Erb would have to "overcome a presumption in favor of the honesty and integrity of those serving as adjudicators ...". *Withrow,* 421 U.S. at 47, 95 S.Ct. 1456.

## V. CONCLUSION

The Court affirms the circuit court's judgment quashing the preliminary writ, but remands for further proceedings as to Ms. Martin–Erb's claims.

LIMBAUGH, C.J., WHITE, WOLFF and PRICE, JJ., and DIERKER, Sp.J., concur.

BENTON and RICHARD B. TEITELMAN, JJ., not participating.